<u>**NOT FOR PUBLICATION**</u>

**UNITED STATE DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CORNERSTONE INVESTMENT PARTNERS, LLC; CORNERSTONE INVESTMENT PARTNERS I, LLC,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>STEAK N SHAKE ENTERPRISES, INC.<br><br>　　　　　　　　　　Defendant. | Civil Action No. 2:14-cv-06581-SDW-SCM<br><br>**OPINION**<br><br>July 6, 2015 |

**WIGENTON**, District Judge.

Before this Court is Steak n Shake Enterprises, Inc.'s ("Defendant") Motion to Dismiss the Complaint filed by Plaintiffs Cornerstone Investment Partners, LLC and Cornerstone Investment Partners I, LLC (collectively, "Plaintiffs") for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion").

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391.[1] This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons below, Defendant's Motion is **GRANTED** and Plaintiffs' claims will be dismissed without prejudice.

---

[1] This Court notes that Defendant contends that Plaintiffs have not adequately pled diversity. (Dkt No. 5, 7 n. 3.)

1

**FACTUAL AND PROCEDURAL HISTORY**

Defendant Steak n Shake is incorporated in Indiana and has offices at 500 Century Building, 36 Pennsylvania Street, Indianapolis, Indiana. Defendant operates and grants franchises for restaurants offering burgers and milkshakes. (Compl. ¶ 4.) Plaintiff Cornerstone Investment Partners, LLC ("Cornerstone") has its principal office at 700 Paramus Park, Paramus, New Jersey. (Compl. ¶ 1.) Cornerstone initially explored with Defendant the opportunity to purchase and operate one of Defendant's franchises. (*Id.* ¶ 9). Cornerstone established Cornerstone Investment Partners I, LLC ("Cornerstone I") to purchase and operate the franchise. (*Id.*)

Defendant has traditionally offered franchises for "Classic" restaurants. Such restaurants operate twenty-four hours a day for seven days a week, feature a full menu, contain typically between 3000 and 4000 square feet of space, and offer dine-in, drive-thru, and carry-out service. (Dkt. No 5, Ex. 2, p. 9 (hereinafter "Financial Disclosure Document" or "FDD").)[2] In January 2011, Defendant began to offer franchises for "Signature" restaurants. The "Signature" restaurants are smaller and offer a more limited menu than the "Classic" restaurant. (*Id.*)

Defendant opened its first Signature restaurant in New York City on January 12, 2012. (*Id.* at 9-10.) The Signature restaurant located in New York City was the only restaurant of its kind in operation during the course of the negotiations between Plaintiffs and Defendant. (Compl. ¶ 19.) In a January 22, 2012 meeting, Defendant's representatives orally declined to provide information about the Signature model's costs and told Cornerstone I's agent that they should "trust" Defendant's research into the financial viability of the Signature restaurant model. (*Id.* ¶¶ 29B, 29E.) On January 23, 2012, Defendant withdrew a previous approval for Cornerstone I to build a Classic restaurant. Instead, Defendant stated that Cornerstone I would have to elect a Signature

---

[2] The FDD is specifically referred to in the Complaint and excerpts from the FDD are included in the pleadings. As such, the FDD is discussed herein, as it is not beyond or outside of the Complaint.

restaurant. (*Id.* ¶ 29E.) By January 27, 2012, Cornerstone I and Defendant had begun negotiations to grant a franchise to Cornerstone I for a Signature restaurant located in Paramus Mall, Paramus, New Jersey. (Compl. ¶¶ 4, 29A.)

Although Defendant noted some differences between the Signature restaurants and the Classic restaurants, Defendant offered cost estimates using data from Classic restaurants. For example, the FDD's Item 19 provides a "historical" range of cost estimates for "Classic" restaurants. (FDD, Item 19 at 77-78.) The language surrounding this information states:

> Our first Steak n Shake Signature Restaurant opened on January 12, 2012, so these figures do not include results from any Steak n Shake Signature Restaurants. Sales at Steak n Shake Signature Restaurants may vary from our Classic Steak n Shake Restaurants due to the limited menu, reduced hours of operation, and lack of drive-thru sales.

(*Id.*) Item 7 identifies the data as an "Estimated Initial Investment." (FDD, Item 7 at 22.) A footnote to Item 7 states:

> We recently developed the Steak n Shake Signature Restaurant model and as of the issuance date of this Disclosure Document, we only operate one Steak n Shake Signature Restaurant in New York City. The [initial investment] figures provided in the above chart for Steak n Shake Signature Restaurants are estimates based on quotes we received to construct a 2,500 [square foot] Steak n Shake Signature in San Antonio, [Texas] . . . Your individual costs and expenses are likely to vary. You are strongly advised to consult with a business advisor to more accurately determine your particular costs and expenses. The development costs for the New York City Steak n Shake Signature Restaurant were not included since they are not representative of the typical development costs as this location was developed as a flagship location.

(FDD, Item 7 at 23, n. 2.)

On April 5-6, 2012, representatives of Cornerstone I repeatedly requested via e-mail cost estimates for the Signature model. Defendant's representatives refused to provide the estimates. (Compl. ¶¶ 29H, 29I.) On April 15, 2012, Cornerstone I's representative spoke to James

Valentino, Defendant's Vice President of Franchise Operations.  Plaintiffs repeated their request for Signature cost data.  Valentino did not provide the requested information, but he promised Plaintiffs' representative that Defendant would "work with" Plaintiffs to resolve any operational issues. Valentino allegedly stated that Plaintiff could rely on the data associated with Classic restaurants because food and labor costs for the Signature model would be less than those of the Classic model.  (*Id.* ¶¶ 29K, 29L.)  On April 25, 2012, Valentino again declined to provide cost estimates for the Signature model.  (*Id.* ¶ 29M.)

On April 23, 2012, Cornerstone I signed Defendant's standard-term franchise agreement ("Agreement") - three months after the opening of the Defendant's first Signature restaurant.  (Compl. ¶¶ 4, 10, 12.)  On October 1, 2012, Cornerstone I opened its Signature restaurant.  (*Id.* ¶ 14.)  Subsequently, Cornerstone I began to experience significant operating losses stemming from unexpectedly high costs.  (*Id.* ¶¶ 15.)  To accommodate for these costs, Cornerstone I requested changes in the standard of performance mandated by the franchise agreement.  (Compl. ¶ 17.)  Defendant refused to allow the changes.  (*Id.*)

On October 23, 2014, Plaintiffs filed their Complaint.  (*Dkt. No.* 1.)  They alleged eight counts: a violation of the New Jersey Franchise Practices Act (Count I), fraud (Count II), misrepresentation (Count III), a violation of the New York Franchise Sales Act (Count IV), a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count V), breach of contract due to a violation of the covenant of good faith and fair dealing (Count VI), a violation of the New Jersey Consumer Fraud Act ("NJCF Act") (Count VII), and punitive damages (Count VIII). (Compl. ¶¶ 21-59.)  On January 6, 2015, Plaintiff voluntarily dismissed Counts V and VII. (Dkt. No. 13, 44.)

On November 24, 2014, Defendant filed the instant Motion and moved to dismiss all counts.  (Dkt. No. 5.)  On January 6, 2015 and January 15, 2015, Plaintiffs filed briefs in opposition to the Motion to Dismiss.  (Dkt. Nos. 13, 15.)  On January 13, 2015, Defendant filed its response in support of the Motion to Dismiss.  (Dkt. No. 19.)

**LEGAL STANDARD**

In considering a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "'that the pleader is entitled to relief'" as required by Rule 8(a)(2). *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

According to the Supreme Court in *Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (second alteration in original) (internal citations omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286

(1986)). The Third Circuit summarized the *Twombly* pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips*, 515 F.3d at 234 (alterations in original) (quoting *Twombly*, 550 U.S. at 556).

**DISCUSSION**

Defendant asserts that Plaintiffs' claims are time-barred due to the limitations period contained in the franchise agreement,[3] but in the alternative, also sets forth several arguments why the counts individually should be dismissed.[4] (Dkt. No. 5, 5.) First, this Court notes that Plaintiffs voluntarily dismissed Counts V (RICO) and VII (NJCF Act). (*See* Pl.'s Opp'n 44.) Next, as provided below, this Court addresses the remaining claims and finds that they should be dismissed.

**Fraud (Count II) and Misrepresentation (Count III)**

This Court will first address Plaintiffs' counts regarding fraud and misrepresentation, as many of the other allegations rely on the same facts and assumptions. Claims for fraud must be pled with particularity. *See* Fed. R. Civ. P. 8(a). The following elements are required to sustain a claim for New Jersey common law fraud: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other

---

[3] Section 15.9 of the franchise agreement provides that an action arising out of the agreement "shall be commenced within one (1) year from the occurrence of the facts giving rise to such claim or action, or, it is expressly acknowledged and agreed by all parties, such claim or action shall be irrevocably barred." The alleged facts giving rise to Plaintiffs' claims occurred prior to Cornerstone I's execution of its franchise agreement on April 23, 2012, but Plaintiffs' Complaint was not filed until October 23, 2014 – more than two years after the execution of the agreement. (*See* Compl. ¶ 10). Thus, Plaintiffs' claims would be time-barred. However, Plaintiffs argue that the agreement was procured by fraud, and as a result, the agreement is voidable and may be rescinded.

[4] As Plaintiffs also assert claims of fraud in the inducement of the agreement, this Court will review the adequacy of the pleadings specifically related to fraud and misrepresentation rather than simply the statute of limitations.

person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).

As pled, Plaintiffs have not set forth facts to support claims for fraud and misrepresentation. On the face of the Complaint, Plaintiffs have not pled a violation of the FDD. Plaintiffs entered into the franchise agreement, knowing the Signature business and flagship had operated for a relatively short period of time. Specifically, although Plaintiffs state that Defendant withheld material information regarding food and labor costs, Plaintiffs have not clearly alleged how they were *misled*. The Agreement did not indicate that Defendant was required to provide the information identified by Plaintiffs, specifically to support the contention that the new model Signature restaurants had significantly higher food and labor costs than the historical figures.

Further, Plaintiffs include vague statements in their Complaint regarding the alleged material information Defendant failed to disclose. Claiming generally that Defendant made misleading statements and material omissions without support is insufficient. Again, Plaintiffs do not allege that Defendant failed to disclose anything that it was required to disclose under the FDD. Item 19 clearly states that FDD includes the "historical financial performance representations . . . for company operated and franchised Classic Steak n Shake Restaurants." (Def's Br., Ex 2, FDD 77-78.) Plaintiffs' own statements and pleadings make it clear that they knew the "Signature" restaurant was a new product. As pled, the issues regarding alleged oral statements, food and labor costs and menu items are insufficient to maintain claims for fraud and misrepresentation. *See* Fed. R. Civ. P. 8(a) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"). Thus, the claims of fraud and misrepresentation (Counts II and III) have not been adequately pled and will be dismissed.

**New Jersey Franchise Practices Act (Count I)**

Plaintiffs assert that the Agreement was fraudulently induced; however, as set forth above, those claims cannot be maintained. Plaintiffs also contend that due to Defendant's uniform pricing strategy and unproven business format, Defendant imposed unreasonable standards in violation of the New Jersey Franchise Practices Act ("NJFPA").

Pursuant to the NJFPA, a franchisor may not impose "unreasonable standards of performance." N.J.S.A. 56:10-7(e); *Pai v. DRX Urgent Care, LLC*, 2014 U.S. Dist. LEXIS 27071, *37 (D.N.J. Mar. 4, 2014) (discussing constructive termination under the NJFPA); *see also Carlo C. Gelardi Corp v. Miller Brewing*, 502 F. Supp. 637 (D.N.J. 1980). Here, Plaintiffs have not set forth facts to support claims that Defendant imposed "unreasonable" standards in violation of the Act, but rather, that they had difficulty meeting these standards given their higher occupancy costs.

**New York Franchise Sales Act (Count IV)**

The New York Franchise Sales Act ("NYFSA"), Section 687(2) requires the disclosure of necessary information for a franchise agreement. Defendant contends that it was not required to register in New York pursuant to an exemption based on its net worth. *See* N.Y. Gen. Bus. § 684(3)(a)(i). The exemption applies "if the department finds that such action is not inconsistent with the public interest or the protection of prospective franchisees." *Id.* Notably, Plaintiffs' claims regarding the NYFSA rely on the same allegations of misleading oral statements that are vaguely pled within the Complaint and contradicted by the language of the Agreement. As such, this count will also be dismissed.

**Breach of Contract - Covenant of Good Faith and Fair Dealing (Count VI)**

Plaintiffs allege breach of contract due to a violation of the covenant of good faith and fair dealing. However, Plaintiffs do not plead that a specific provision of the FDD was breached. Plaintiffs claim that oral misrepresentations by Defendant's representatives (including James Valentino) were made regarding the food and labor data, upon which information Plaintiffs reasonably relied. However, Item 19 of the FDD states that no representative for the Defendant may make any historical cost information representations outside of those provided in Item 19.

Additionally, Defendant argues that Count VI is unsupported by Indiana law, which Defendant asserts is the relevant law due to a forum selection clause in the franchise agreement. (Def's Br. at 15); *see also Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 918 (Ind. Ct. App. 2011) (noting that a covenant of good faith and fair dealing will be implied only in employment and insurance contracts, or contracts with ambiguous application); *but see In the Matter of Wilson v. Amerada Hess Corp.*, 168 N.J. 236 (2001) (recognizing the covenant in other contracts). Regardless, assuming the covenant applies, Plaintiffs have not adequately pled a violation of such a covenant.

**Punitive Damages (Count VIII)**

Finally, Defendant contends that Count VIII should be dismissed for the following reasons: (1) no independent claim exists for punitive damages; and (2) Plaintiffs waived such damages in the franchise agreement. (*Id.* at 18.) As this final count relies on others in the Complaint, which this Court has addressed and will dismiss, Count VIII for punitive damages is also dismissed.

Plaintiffs have failed to plead facts and claims for which relief may be granted. Even viewing the Complaint in the light most favorable to Plaintiffs at this stage, given the deficiencies in the Complaint, the Motion to Dismiss will be granted.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion is **GRANTED** and Plaintiffs' claims are dismissed without prejudice.

s/ Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
cc:     Parties
        Steven C. Mannion, U.S.M.J.